IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMEET SINGH,<br><br>                Petitioner,<br><br>vs.<br><br>D. K. SISTO, Warden, California State Prison, Solano,<br><br>                Respondent. | No. 2:08-cv-00950-TMB<br><br>MEMORANDUM DECISION |

Petitioner Harmeet Singh, a state prisoner appearing *pro se*, has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. Singh is currently in the custody of the California Department of Corrections and Rehabilitation incarcerated at the California State Prison, Solano.

At Docket No. 13 the Court entered an Order to Show Cause why this matter not be stayed pending the issuance of the mandate by the United States Court of Appeals for the Ninth Circuit in *Hayward v. Marshall*, 512 F.3d 536, *rehrg en banc granted*, 527 F.3d 797 (9th Cir. 2008), Case No. 06-55392. At Docket No. 14 Singh opposed staying this matter. The Court agrees that it is unnecessary for this matter to be stayed and now renders its decision on the merits.

I. BACKGROUND/PRIOR PROCEEDINGS

Singh was convicted in December 1999 upon a plea of guilty to one count each of first degree robbery and attempted murder. Singh was sentenced to four years on the robbery charge and seven years to life on the attempted murder charge; the sentences to be served consecutively.

In July 2007, Singh made his first appearance before the California Board of Prison Terms ("BPT"), which denied his parole. Singh challenged the denial of parole in a petition for a writ of habeas corpus in the California Superior Court in and For the County of Sacramento, which denied his petition in a reasoned decision. Singh filed separate petitions in the California

Court of Appeal and the California Supreme Court. Both petitions were summarily denied without comment or citation to authority on January 24, 2008, and March 26, 2008, respectively. Singh timely filed his petition for relief in this Court on April 30, 2008 (date stamped May 5, 2008).

## II..  GROUNDS RAISED/DEFENSES

In his petition Singh challenges the decision of the BPT denying him parole on two grounds: (1) denial violated his plea agreement and (2) BPT impermissibly relied on the nature of the underlying conviction. Respondent concedes that Singh has exhausted his state court remedies and that there are no procedural bars to either of the grounds raised.

## III.  STANDARD OF REVIEW

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[1] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[2] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[3] When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable, "not just

---

[1] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[2] *Williams v. Taylor*, 529 U.S. at 412.

[3] *Carey v. Musladin*, 549 U.S. 70, ___, 127 S.Ct. 649, 654 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. ___, ___, 128 S.Ct. 743, 746-47 (2008) (per curiam).

incorrect."[4]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[5]

In applying this standard, this Court reviews the last reasoned decision by the state court,[6] which in this case was that of the California Superior Court in and for the County of Sacramento. In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[7]

To the extent that Singh raises issues of the proper application of State law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[8]  A federal court must accept that state courts correctly applied state laws.[9]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[10]  This principle applied to federal habeas review of state convictions long before AEDPA.[11]  A federal court errs if it interprets a state legal doctrine in a manner that directly

---

[4] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[5] *Schriro v. Landrigan*, 550 U.S. ___, ___, 127 S.Ct. 1933, 1939 (2007).

[6] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

[7] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[8] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[9] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[10] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see also West v. AT & T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . . .").

[11] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

conflicts with the state supreme court's interpretation of the law.[12] It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[13]

A determination of state law by a state appellate court is also binding in a federal habeas action.[14] This is especially true where the highest court in the state has denied review of the lower court's decision.[15]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[16] Nor may a federal court issue a habeas writ based upon a perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[17]

## IV.  DISCUSSION

A.   *Breach of Plea Agreement*.

Singh argues before this Court, as he did before the California Courts, that in denying him parole, the BPT breached the plea agreement. In rejecting Singh's arguments the Sacramento Superior Court held:

> Petitioner first claims that the decision breached his plea agreement that promised his release after serving the minimum term of the life term.
>
> Not so. There was no promise made to petitioner that he would be released on parole after serving 11 years in prison. In entering the plea bargain, petitioner was informed that he would be sentenced to seven years to life plus an additional and consecutive four years, for a total of 11 years to life. That meant a maximum sentence of life in prison, and petitioner was never told at the change of plea

---

[12] *See Bradshaw,* 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[13] *Id.* at 76.

[14] *See Hicks v. Feiock,* 485 U.S. 624, 629-30, 630 n. (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[15] *Id.*; *see also West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.").

[16] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[17] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

hearing that he would in fact be entitled to release after serving 11 years in prison. Thereafter, petitioner attempted to withdraw his plea, and at the hearing on the matter the prosecutor informed the court that petitioner had been offered the opportunity to enter a plea of 11 years to life, meaning a "life top," but which also allowed him the possibility of a prarole (*sic*) date earlier than had he gone to trial and been convicted of all charges, and that this offer had not been coercive. The court then denied the motion to withdraw the plea. Petitioner does not now show that he had been offered anything otherwise, when the plea agreement was presented to him. It is clear that he understood, at the time, that the plea agreement meant that he had the possibility of obtaining release on parole after serving 11 years, but it was by no means any guarantee of entitlement to parole at that time.

> The claim, therefore, is denied (In re Bower (1985) 38 Cal.3d 865).

> Petitioner also claims that the decision violated his due process rights, because the panel relied on dismissed charges of torture and conspiracy to commit murder, which breached his plea agreement.

> Petitioner's plea agreement was not breached by the panel's consideration of the admitted factual basis of the plea. Petitioner's plea agreement was limited to his pleading guilty to attempted murder and to home invasion robbery, for a stipulated midterm of four years for the robbery and a consecutive seven years to life for the attempted murder and for dismissal of the remaining charges, conditioned on petitioner being available to testify against his codefendants. There was no agreement that the facts of the crime could not be considered in their entirety by the parole authority when petitioner became eligible for consideration for parole.

It is clearly the law that if, in fact, the prosecution breached the plea agreement, the case must be remanded to the state courts for a determination of the appropriate remedy under the circumstances.[18] Plea agreements are contractual in nature and are analyzed under principles of contract law.[19] The proper interpretation and effect of the agreement between the State of California and Singh in this case is a matter governed by California contract law,[20] a matter that, as noted above, is beyond the purview of this Court in a federal habeas proceeding. The Sacramento Superior Court found that there was no agreement that Singh would be paroled after

---

[18] *See Santobello v. New York*, 404 U.S. 257, 262–63 (1971).

[19] *See United States v. Carrillo*, 709 F.2d 35, 36 (9th Cir. 1983).

[20] *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987).

serving his minimum 11-year term or that the BPT would not consider the nature of his underlying conviction. This Court is bound by that finding unless Singh controverts it by clear and convincing evidence.[21] A burden Singh has failed to carry.

Under the facts and circumstances of this case, this Court cannot say that a determination that the plea agreement or cooperation agreement was not breached was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[22] Nor can this Court find that the state courts unreasonably applied the correct legal principle to the facts of Denton's case within the scope of *Andrade–Williams-Landrigan*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Singh is not entitled to relief under his first ground.

B.    *Violation of Due Process*.

Singh argues before this Court as he did before the state courts that the BPT impermissibly relied primarily on the nature of his commitment offense in violation of his rights under the Due Process Clause. The Sacramento Superior Court rejected Singh's argument, holding:

> Nor does case law prohibit the consideration of the admitted facts of the commitment offenses. Indeed, case law has held that any factor shown by the evidence may be considered, even if it pointed to a higher degree of the offense that the inmate was actually convicted of (In re Rosenkrantz (2002) 29 Cal.4th 616 [parole panel could consider premeditation and deliberation shown by evidence, even though jury acquitted inmate of first degree murder and convicted him only of second degree murder]).
>
> In this case, the factual basis of the plea admitted by petitioner as well as the facts that petitioner admitted to at the parole hearing itself showed that he was an active participant in a particularly horrendous crime committed upon the victim, involving an attempted drowning of her, hitting her on the head, petitioner himself pouring bleach on a towel and forcing it up her nose and on her face, participating in the pouring of bleach then on her body and forcing her to drink it,

---

[21] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell, supra*.

[22] 28 U.S.C. § 2254(d).

then attempting to set fire to her, and finally stabbing her twice in the back. The Board panel was entitled to consider all the facts admitted in the factual basis of the plea, as well as the facts that petitioner admitted at the parole hearing, in their entirety, and characterize the commitment offense in light of those facts, which the Board did.

As such, the second claim is denied (<u>Bower, supra</u>).

*Sass v. California Board of Prison Terms*,[23] settled the issue that a California prisoner has a liberty interest in parole protected by the procedural safeguards of the Due Process Clause of the Fourteenth Amendment.[24] It is equally as well settled that a decision of the parole board to deny a prisoner parole must be supported by some evidence in the record.[25] Singh challenges the refusal of the Board to grant him a parole on the basis that the decision was based primarily, if not wholly, upon the nature of his commitment offense.[26] In *Biggs v. Terhune*,[27] the Ninth Circuit indicated that although the commitment offense provides some evidence of unsuitability

---

[23] 461 F.3d 1123, 1128 (9th Cir. 2006)

[24] Respondent candidly acknowledges that his contrary position is foreclosed by controlling authority and only raises it in order to preserve the issue for appeal.

[25] *Sass*, 461 F.3d at 1128–29 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985))

[26] Under California law, the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense, which inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. *In re Lawrence*, 190 P.3d 535, 560 (Cal. 2008). A denial-of-parole decision may be based upon the circumstances of the offense, or upon other immutable facts such as a parole applicant's criminal history, but some evidence will support such reliance only if those facts support the ultimate conclusion that the parole applicant continues to pose an unreasonable risk to public safety; accordingly, the relevant inquiry for a reviewing court is not merely whether the parole applicant's crime was especially callous, or shockingly vicious or lethal, but whether the identified facts are probative to the central issue of current dangerousness when considered in light of the full record before the Board or the Governor. *In re Shaputis*, 190 P.3d 573, 581 (Cal. 2008). "Factors beyond the minimum elements of the crime include, (1) the commitment offense, where the offense was committed in 'an especially heinous, atrocious or cruel manner'; (2) the prisoner's previous record of violence; (3) 'a history of unstable or tumultuous relationships with others'; (4) commission of 'sadistic sexual offenses'; (5) 'a lengthy history of severe mental problems related to the offense'; and (6) 'serious misconduct in prison or jail.'" *Irons v. Carey*, 505 F.3d 846, 851 n.4, citing Cal. Code. Regs., tit. 15 § 2402(c).

[27] 334 F.3d 910, 916–17 (9th Cir. 2003)

for parole, "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the system and could result in a due process violation." It is this principle that Singh has drawn into issue in this case.

There is, as this Court has noted in other cases, a lack of clear guidance from the Court of Appeals on this issue. Where the line of demarcation that triggers a violation of the Due Process Clause referred to in *Biggs* lies is unknown. *Irons v. Carey*,[28] appears to make it dependent, at least in significant part, upon the gravity of the commitment offense, how heinous it was, *e.g.*, the extent to which the prisoner acted in callous disregard for human life, the degree of depravity or cruelty shown, and the nature of the victim. The holding in *Irons* established a bright-line test of sorts, *i.e.*, a crime that is more heinous, atrocious, callous, or cruel than that committed by Sass,[29] is sufficient to satisfy due process, despite evidence of exemplary behavior in prison and evidence of rehabilitation and the lack of a prior criminal record.[30] *Irons* did not, however, address the question posed by *Biggs*—at what point in time does the nature of the commitment offense becomes so attenuated that it no longer constitutes "some evidence"?[31]

From *Biggs*, *Sass*, and *Irons*, a district court can glean certain guiding principles in ruling on a California prisoner's application for a writ of habeas corpus addressed to the denial of

---

[28] 505 F.3d 846, 853–54 (9th Cir. 2007).

[29] Sass was convicted of second degree murder, gross vehicular manslaughter, hit and run death, causing injury while driving under the influence, and felony drunk driving, arising out of an automobile accident in which a death occurred. He was sentenced to 15 years to life with the possibility of parole. Prior to his conviction of second degree murder, Sass had been convicted on seven separate occasions for DUI.
Irons was convicted of second degree murder and sentenced to 17 years to life in prison with the possibility of parole. After an angry confrontation with the victim, Irons went to his room, retrieved his gun, and then went to the victim's room where he fired 12 rounds into the victim and, after the victim complained that he was in pain, stabbed him twice in the back. He then wrapped the victim's body in a sleeping bag and left it in the room for the ten days it took him to procure a car. Irons then took the body to the coast, weighed it down, and disposed of it in the ocean. Prior to his conviction, Irons had no criminal record.

[30] 505 F.3d 853–54.

[31] In *Irons*, as well as in this case, *Sass* and *Biggs*, the determination denying parole was made prior to the time that the petitioner had served the minimum term to which he was sentenced.

parole. First, a California prisoner has a liberty interest in parole protected by the Due Process Clause. Second, the test to be applied is whether some evidence indicates a parolee's release unreasonably endangers public safety, not whether the findings of the Board are supported by evidence. Third, at least until such time as the prisoner has served the minimum sentence imposed, denial of a parole date solely upon the basis of the commitment offense more likely than not does not violate the Due Process Clause. Fourth, a district court must examine the record for sufficient evidence to support the findings of the Board that release unreasonably endangers public safety. Fifth, the extent to which the gravity of the commitment conviction is attenuated by time, assuming that all other factors properly considered are either neutral or positive, is dependent upon (1) the nature of the commitment offense and (2) there has been a significant time lapse since the offense was committed.

In this case, although it played a significant role, the Board did not make its decision based solely upon the commitment offense. The Board was also concerned about Singh's attitude, *i.e.*, that because he had done his minimum time and completed self-help programs, he was entitled to parole; that Singh did not fully appreciate the horrifying effects his actions had on the victims, as well as his inability to explain why it was necessary to inflict torture on the victims. The Board felt it was necessary for Singh to get more education and work experience, as well as more self-help in understanding what it was like to be a torture victim—not having excuses for his behavior, but looking into reasons so that he might convince a future board that he would not repeat his actions on another person. The Board was also concerned about his parole plans in that they did not take into consideration that there was a significant probability that, like his wife, Singh would be deported back to Fiji and he had to make appropriate preparations for that eventuality.

Singh's crime was no doubt more heinous and cruel than that committed by Sass. As was the panel in *Irons*, this Court is bound by *Sass* and, as the *Irons* panel, must find that Petitioner's due process rights were not violated. Singh is not entitled to relief under his second ground.

V.  CONCLUSION and ORDER

Singh is not entitled to relief under any grounds raised in the petition.  Accordingly,

**IT IS ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[32]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  See Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter final judgment accordingly.

Dated:  December 31, 2008.

s/ Timothy M. Burgess<br>TIMOTHY M. BURGESS<br>United States District Judge

---

[32] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).